UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Euriziel Everett, | ) | Civil Action No.: 4:21-cv-01764-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Horry County Police Dept., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This employment discrimination case was originally filed in the Court of Common Pleas for Horry County, South Carolina. Plaintiff, Euriziel Everett, alleged the following claims: 1) discrimination and hostile work environment based on national origin in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000(e), *et seq*.; 2) discrimination and hostile work environment in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq*.; 3) retaliation in violation of Title VII, the ADA, and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, *et seq*.; 4) age discrimination and hostile work environment in violation of the ADEA; and 5) a state law claim for negligent supervision of an employee. Defendant removed the case to this Court on the basis of federal question jurisdiction, 28 U.S.C. § 1441, on June 11, 2021.

Pending before the Court is Defendant Horry County Police Department's motion for summary judgment. ECF No. 34. This matter is before the Court with the Report and Recommendation ("R&R") of Magistrate Judge Thomas E. Rogers, III filed on July 24, 2023.[1] ECF No. 47.

---

[1]    This matter was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and Local Civil Rule 73.02(B)(2)(g).

### Factual Background

Plaintiff, who was born in 1960 in Panama and identifies as Latino, began working for Defendant Horry County Police Department as a Bilingual Spanish/English Administrative Assistant in the Department's Central Precinct in Conway, South Carolina on October 30, 2017. Plaintiff initially worked at the front desk greeting guests, signing in visitors, accepting FOIA requests, and other customer service tasks. Plaintiff was hired at a higher rate of pay as a bi-lingual speaker than a normal administrative assistant. Pl. Dep. 234.

In March of 2018, two employees with Defendant, including one of Plaintiff's supervisors, complained about Plaintiff and another co-worker speaking Spanish in the office. Plaintiff did not report the issue but participated in the investigation. As a result of the investigation, the two complaining co-workers, one of which was Plaintiff's supervisor, were terminated.

Plaintiff alleges that retaliation began after the investigation and termination of the two co-workers. She alleges her other co-workers in the Central Precinct were no longer friendly to her. She stated in her deposition that "[n]obody wanted to talk to me." Pl. Dep. p. 52. Her Captain allegedly told her that "I don't like that my right hand was fired." *Id.*

In July 2018, Plaintiff received a score of "meets expectations" in every category of her employee evaluation. ECF No. 40-4 at 28. After the terminations mentioned above and during the period in which Plaintiff alleges she was retaliated against, in September of 2018, Plaintiff requested a transfer to the West Precinct from Captain Strickland. Pl. Dep. at 59. Plaintiff testified in her deposition that the environment at the Central Precinct was not healthy and that transferring to the West Precinct would be more convenient for her because it was closer to her home. *Id.* at 59-60.

Plaintiff's request to transfer to the West Precinct was granted and she continued her duties

2

as an administrative assistant, with one of those duties being to keep track of the weekly payroll and transferring that information to the Central Precinct. *Id*. at 71-72.  Plaintiff testified that there were approximately four or five people in the West Precinct office. *Id*. at 70.

In July of 2019, at the West Precinct, Lt. Powell issued a very favorable review of Plaintiff's work performance. ECF No. 40-4 at 29-31.  Plaintiff received three "exceeds expectations," three "exceptional," and two "meets expectations" ratings on her employee evaluation. *Id*. at 30-31.

Plaintiff reached out to the HR department in an email on August 22, 2019. ECF No. 34-10. In her initial email on August 22, 2019, Plaintiff was not specific and indicated that she did not want to file a complaint "yet," but just wanted to ask for advice. *Id*.  The HR department responded to Plaintiff and asked for more detail so that they could "connect [her] with the right HR representative." *Id*.  Later that morning, Plaintiff responded to the HR department and elaborated on her concerns. ECF No. 34-11 at 2.  Primarily, Plaintiff complained that the retaliation she allegedly experienced at the Central Precinct followed her to the West Precinct. *Id*.  Plaintiff also complained that she felt the other employees in her office were not in the office as much as they should be. *Id*. Plaintiff alleged that she faced insults from members of the public who were frustrated that there were not more employees physically present in the West Precinct office. *Id*.  Plaintiff stated that she left a message with the Victims Advocate's supervisor to ask where the Victims Advocate was and that she never knew where the Victims Advocate was or whether she was coming into the office. *Id*. Plaintiff alleges that the next day, the Victims Advocate complained about Plaintiff to the Lieutenant on duty in the West Precinct. *Id*.  Plaintiff also complained that she was denied opportunities for promotion and training and that she did not receive shirts and jackets like the other female employees. *Id*.  HR responded to Plaintiff's email later that afternoon and informed her how

3

she should proceed. ECF 34-11 at 1.

On August 30, 2019, Plaintiff had a verbal altercation with Officer Jennifer Sims in the West Precinct office. ECF No. 34-12 at 2-3. Plaintiff and Officer Sims both complained to Lieutenant Powell and both Officer Sims and Plaintiff wrote reports of the incident. However, Plaintiff alleges that Lieutenant Powell went behind her back and told Officer Sims what to write in her report, although Plaintiff offers no specifics for this allegation. Pl. Dep. at 108-113.

After the August 30, 2019 incident, Plaintiff initiated a report with HR and prepared a statement dated September 11, 2019. ECF No. 34-12 at 1-5. She reported that (1) there was too much socializing in the office that occurred between other employees, (2) co-employees would not inform her where they were going when they left the office, (3) Lt. Powell breached her confidence when he told other employees about citizens' complaints she was receiving, (4) she was not allowed to enroll in training classes she wished to attend, (5) she did not get department shirts like the other administrative assistants until she demanded it, and (6) she was not interviewed for other county positions outside of the police department for which she had applied. *Id.*

Defendant offered Plaintiff a special transfer from the Police Department to the Clerk of Court's office; however, Plaintiff ultimately turned down the offer when she was asked to release any claims associated with her alleged harassment/retaliation complaints. Pl. Dep. pp. 189-91; Emails between Pl. and Hagemeier (ECF No. 34-13).

Plaintiff then offered to resign in return for the County not opposing her unemployment or disability claims. ECF No. 34-15. Mrs. Hagemeier, Defendant's HR legalist, prepared a Separation Agreement and Release of Claims. ECF No. 34-14. Section 5 of the Separation Agreement contained the County's pledge not to oppose any claim for unemployment benefits or disability

4

insurance. *Id*. Mrs. Hagemeier explained to Plaintiff that the County could not guarantee that she would be eligible for unemployment or disability insurance; however, the County would not oppose her application. ECF No. 34-15. On September 30, 2019, Plaintiff signed the Separation Agreement and Release of Claims, which contained a 7-day revocation period. Separation Agreement and Release.

On September 30, 2019, Plaintiff also filed a Charge of Discrimination with the South Carolina Human Affairs Commission (SCHAC). ECF No. 34-9. On October 2, 2019, Mrs. Hagemeier issued a Human Resources Report of Investigation, which addressed Plaintiff's complaints regarding "operational issues," "inappropriate comments by a former supervisor," and "a loud confrontation by a coworker." ECF No. 40-4 at 34-37. Hagemeier concluded that Plaintiff's complaints of harassment, discrimination, and retaliation were unsubstantiated, but that it was substantiated that both Plaintiff and Sims "were involved in a personal altercation during which both employees were yelling and approached each other in a manner that was inappropriate and unprofessional with regard to their workplace communications." *Id*. 36-37. Hagemeier indicated that if both employees were still employed, it would be recommended that they both receive written reprimands. *Id*. at 37. However, because Plaintiff was no longer employed with Defendant, Hagemeier recommended that Sims receive a written reprimand. *Id*.

On October 3, 2019, Plaintiff emailed Ms. Hagemeier and stated that she was revoking her signature on the Separation Agreement and was quitting her job. ECF No. 34-17. Plaintiff alleged that she "found out several things you didn't even offer, advise me of, etc. So the agreement is off. I am quitting my job with the County… ." *Id*. Hagemeier advised Plaintiff that she understood from Plaintiff's email that she was revoking her signature on the Separation Agreement, her separation

date would be September 30, 2019, and her separation would be reflected as "voluntary resigned," which would be communicated to the South Carolina Department of Employment and Workforce (SCDEW). *Id*.

The Magistrate Judge recommended granting Defendant's motion for summary judgment as to Plaintiff's Title VII, ADEA, and ADA causes of action (discrimination, hostile work environment, and retaliation) and that the Court decline to exercise jurisdiction over Plaintiff's state law negligent supervision claim and remand the matter to the Horry County Court of Common Pleas pursuant to 28 U.S.C. § 1367(c)(3). Plaintiff filed objections to the R&R on August 5, 2023. ECF No. 48. Defendant filed a reply on August 31, 2023. ECF No. 52.

## Standard of Review

The Magistrate Judge makes only a recommendation to the Court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court is charged with making a *de novo* determination of those portions of the R & R to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The right to *de novo* review may be waived by the failure to file timely objections. *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). The Court need not conduct a *de novo* review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate's proposed findings and recommendations." *Id.* Moreover, in the absence of objections to the R & R, the Court is not required to give any explanation for adopting the recommendation. *Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). However, in the absence of

6

objections, the Court must "'satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

## Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (2010). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

When no genuine issue of any material fact exists, summary judgment is appropriate. *See Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Id.* However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"Once the moving party has met [its] burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show that there is a genuine issue for trial." *Baber v. Hospital Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The nonmoving party may not rely on beliefs, conjecture, unsupported speculation, or conclusory allegations to defeat a motion for summary judgment. *See Baber*, 977 F.2d at 875. Rather, the nonmoving party is required to submit evidence of specific facts by way of affidavits, depositions,

7

interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

## Discussion

I.    Discrimination claims (Title VII, ADA, and ADEA)

Plaintiff has alleged claims for discrimination based on her national origin (Title VII), alleged disability (ADA), and age (ADEA). The Magistrate Judge recommended granting summary judgment in favor of Defendant on each of these claims.

Since Plaintiff is relying on circumstantial evidence of discrimination, she may establish a prima facie case of discrimination by showing that: (1) she belongs to a protected class; (2) she suffered an adverse employment action; (3) at the time of the adverse employment action, she was performing her job at a level that met her employer's legitimate expectations; and (4) she suffered the adverse employment action under circumstances giving rise to an inference of unlawful discrimination. *Palmer v. Liberty Univ., Inc.*, 72 F.4th 52, 63 (4th Cir. 2023); *Cowgill v. First Data Techs., Inc.*, 41 F.4th 370, 379 (4th Cir. 2022); *Adams v. Trustees of the Univ. of N.C.-Wilmington*, 640 F.3d 550, 558 (4th Cir. 2011).

"If a prima facie case is presented, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Adams*, 640 F.3d at 558. If the employer meets that burden of production, "the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons were not its true reasons, but were a pretext for discrimination." *Id*. at 558-59.

A.    ADA

8

The Magistrate Judge recommended granting summary judgment as to Plaintiff's ADA discrimination claim because Plaintiff failed to present sufficient evidence that she belonged to a protected class for purposes of any discrimination claim under the ADA. R&R, ECF No. 47 at 15-16.

To fall within the ADA's protected class, a plaintiff must be a qualified individual with a disability. *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 572 (4th Cir. 2015). The ADA defines "disability" as: "(1) 'a physical or mental impairment that substantially limits one or more major life activities' (the 'actual-disability' prong); (2) 'a record of such impairment' (the 'record-of' prong); or (3) 'being regarded as having such an impairment' (the 'regarded-as' prong)." 42 U.S.C.A. § 12102(1); *Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 328 (4th Cir. 2014).

Plaintiff generally argues in her objections to the R&R that she suffered from a disability and that Lieutenant Powell was aware of her medical issues.  Plaintiff contends that she notified her employer that she suffered from Lupus Anticoagulant, severe Arthritis, and significant knee issues when she was hired, that a full health checkup was conducted after she was hired, and all of these conditions were reiterated.  Plaintiff also contends that she requested a button to open the front door at the West Precinct so she could open the door remotely from her desk.

Viewing the evidence in the light most favorable to Plaintiff, she has failed to establish sufficient evidence that she possesses a physical or mental impairment that substantially limits one or more major life activities <u>or</u> that there is any record of such an impairment.  While her testimony indicates that she suffered from Lupus Anticoagulant, arthritis, anxiety, PTSD, and knee issues, there is insufficient evidence in the record to create a question of fact as to whether any of those conditions substantially limited one or more of her major life activities.  Under different facts, one

9

of the conditions listed above may substantially limit one or more major life activities. However, the record before the Court is insufficient to create a triable issue regarding whether Plaintiff was substantially limited in her ability to work or any other major life activity. Plaintiff's request for a button to open the front door remotely is insufficient to demonstrate that she was substantially limited from working. Significantly, there is no indication that when Plaintiff's request for the remote button was denied that it caused her any difficulty or substantially limited her ability to perform her work tasks.

Additionally, Plaintiff has failed to offer sufficient evidence to create a question of fact that she was "regarded as having such an impairment." "An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C.A. § 12102(3)(A).

One may be "regarded as" disabled under the ADA if either "(1) a covered entity mistakenly believes that [one] has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 703 (4th Cir. 2001); *Coursey v. Univ. of Maryland Eastern Shore*, 577 Fed. Appx. 167, 174 (4th Cir. 2014); *but see West v. J.O. Stevenson, Inc.*, 164 F. Supp. 3d 751, 772 (E.D.N.C. 2016) (questioning *Coursey* and noting that under the ADAAA an individual is "regarded as" having an impairment if he has an actual or perceived impairment, regardless of whether that impairment has any effect on a major life activity). The fact that an employer is aware of an employee's impairment,

10

without more, is "insufficient to demonstrate either that the employer regarded the employee as disabled or that perception caused the adverse employment action." *Haulbrook*, 252 F.3d at 703.

In *West v. J.O. Stevenson, Inc.*, the district court reasoned that, following the 2009 amendments to the ADA, an individual was "regarded as" disabled where :1) he is actually impaired and such impairment is known to his employer, or 2) his employer perceives him to be impaired. *West*, 164 F. Supp. 3d at 772. It does not matter whether this Court applies the definition set forth in *Haulbrook* and *Coursey* or the definition set forth in *West*. Under either framework, Plaintiff's ADA claim fails because she has failed to submit sufficient evidence to create a question of fact that her employer perceived her to be impaired.

Because Plaintiff has not established that she is a qualified individual with a disability, her ADA discrimination claim fails and Defendant is entitled to summary judgment.

B.     ADEA and Title VII discrimination claims

The Magistrate Judge found that Plaintiff established that she belonged to a protected class with regard to her ADEA and Title VII discrimination claims. R&R, ECF No. 47 at 14. However, the Magistrate Judge also found that Plaintiff's ADEA and Title VII discrimination claims ultimately failed, as explained below.

To establish a prima facie case of discrimination, a plaintiff must show, among other things, that she suffered an adverse employment action. *See Adams*, 640 F.3d at 558. For purposes of a discrimination claim, an adverse employment action is one that "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) (internal quotation marks omitted). An

11

adverse employment action must "adversely affect[ ] the terms, conditions, or benefits of the plaintiff's employment." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (quotation omitted). Typical examples of adverse employment actions include "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, [and] reduced opportunities for promotion." *Boone v. Goldin*, 178 F.3d 253, 255-56 (4th Cir. 1999). "[A]n employee's dissatisfaction with this or that aspect of work does not mean an employer has committed an actionable adverse action." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 377 (4th Cir. 2004); *Foresyth v. Wormuth*, No. 21-2000, 2023 WL 5317958, at *2 (4th Cir. Aug. 18, 2023). For an action to be sufficiently "adverse," it must be more than a "trivial discomfort[ ] endemic to employment." *Boone*, 178 F.3d at 256; *Robinson v. Austin*, 602 F. Supp. 3d 825, 832 (D. Md. 2022).

Plaintiff alleges that she suffered the following **adverse employment actions**: subjecting her to commentary, failing to promote her, failing to transfer her, denying her work uniforms, denying her training, and subjecting her to hostilities. Compl. ¶ 74 (ECF No. 1-1). In her objections to the R&R, Plaintiff also claims that Defendant's alleged failure to return her to work after she declined the job at the clerk's office was an adverse employment action.[2]

---

[2]    Plaintiff did not advance this argument/claim before the Magistrate Judge. Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived. *See, e.g., Marshall v. Chater*, 75 F.3d 1421, 1426–27 (10th Cir. 1996); *Paterson–Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990–91 (1st Cir.1988) (holding that "an unsuccessful party is not entitled as of right to de novo review ... of an argument never seasonably raised before the magistrate"); *Borden v. Secretary of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir.1987) (holding that issues raised for the first time in objections to magistrate's recommendation were waived); *see also Greenhow v. Secretary of Health & Human Servs.*, 863 F.2d 633, 638–39 (9th Cir.1988) ("[A]llowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act"). Even if Plaintiff had raised this claim before the Magistrate Judge, the argument still fails because there is insufficient evidence to create a genuine issue for trial as to whether Defendant refused to return Plaintiff to work. Viewing the evidence in the light most favorable to Plaintiff, it appears that she voluntarily resigned her position with the Horry

1.    Commentary and Hostilites

The Magistrate Judge stated that Plaintiff's allegations that she was subjected to "commentary" and "hostilities" did not rise to the level of an adverse employment action when considered alone with respect to Plaintiff's discrimination claims. The Court agrees with the Magistrate Judge and Plaintiff did not object to this portion of the Magistrate Judge's analysis. Finding no clear error, the Court will consider Plaintiff's claims that she was subjected to "commentary" and "hostilities" in its analysis of Plaintiff's hostile work environment claims.

As to Plaintiff's allegations that Defendant failed to transfer her, denied her extra work uniforms, and denied her the training she requested, the Magistrate Judge also found that those allegations did constitute "adverse employment actions." R&R, ECF No. 47 at 16-18.

2.    Transfer

In her objections to the R&R, Plaintiff states in conclusory fashion that the failure to transfer her affected her adversely. Plaintiff does not identify any specific position *within the Horry County Police Department* where she requested a transfer and was denied. The record reflects that Plaintiff requested a transfer from the Central Precinct to the West Precinct in September 2018, but this request was granted. Although Plaintiff's objections vaguely reference 25 transfers and applications to other positions, she does not detail what those positions were or the specifics of any requested transfers. Plaintiff attached an email to her response to Defendant's motion for summary judgment that lists a number of positions for which Plaintiff may have applied, *see* ECF No. 40-4 at 14-16, but

---

County Police Department after a significant amount of negotiation with Defendant over a possible transfer to the Clerk of Court's office. *See* Email from Plaintiff to Denise Hagemeier, ECF Nos. 34-17; 40-3 at 7. Neither Plaintiff's affidavit nor her deposition testimony indicate that she requested to be returned to work after she declined the position at the Clerk of Court's office.

13

there is inadequate evidence to create a triable issue as to whether her rejection from any of those positions had a significant detrimental effect on Plaintiff. It is also not clear from the email who the decision-makers were with respect to any position to which Plaintiff may have applied. In fact, many of the positions listed in the email appear to be positions outside of the Horry County Police Department.

To the extent Plaintiff requested lateral transfers within the Horry County Police Department, generally, the denial of a lateral transfer does not constitute an "adverse employment action" unless the plaintiff can demonstrate that the decision had some detrimental effect on her. *See Call v. Panchanathan*, No. 1:20-CV-260, 2021 WL 4206423, at *7 (E.D. Va. Sept. 15, 2021)*; Stout v. Kimberly Clark Corp.*, 201 F. Supp. 2d 593, 602 (M.D.N.C. 2002); *Wagstaff v. City of Durham*, 233 F. Supp. 2d 739, 744 (M.D.N.C. 2002) (stating "a mere refusal to grant a transfer that an employee desires does not qualify as an adverse employment action unless the decision 'had some significant detrimental effect' on the employee"). Here, Plaintiff has not directed the Court to any evidence that the denial of any requested transfer had a significant detrimental effect on her. Accordingly, there is insufficient evidence that the alleged failure to transfer Plaintiff rose to the level of an adverse employment action.

     3.    Uniforms

Plaintiff also claims that Defendant's failure to supply her with multiple uniform shirts affected her adversely. Pl. Obj., ECF No. 48 at 12. Plaintiff does not offer any specifics as to how the denial of multiple uniform shirts adversely affected the terms, conditions, or benefits of her employment or worked a significant detriment on her. Plaintiff states that she was "required to bother the Defendant for a year to get uniform shirts whereas others were readily provided extras."

14

*Id*. While the denial of multiple uniform shirts may have been inconvenient, Plaintiff has failed to demonstrate how the inconvenience of not having multiple uniform shirts was anything more than a trivial discomfort endemic to employment. *See Boone*, 178 F.3d at 256. Accordingly, there is insufficient evidence to create a genuine question of material fact that the denial of multiple uniform shirts constituted an adverse employment action.

4.    Training

Plaintiff maintains that the alleged denial of training was an adverse employment action. Pl. Obj., ECF No. 48 at 13. Plaintiff states that she requested Microsoft training and database design to create a database for the Precinct. *Id*. In general, the denial of training opportunities does not constitute an adverse employment action for the purposes of a discrimination claim. *Maine v. Azar*, No. CV GLR-16-3788, 2021 WL 3617215, at *17 (D. Md. Aug. 16, 2021); *Chika v. Planning Research Corp.*, 179 F. Supp. 2d 575, 584 (D. Md. 2002) (claims of denied training opportunities "fail as a matter of law" since there is no evidence that the plaintiff suffered any adverse employment action). Here, Plaintiff does not explain how the denial of Microsoft training or database design training "adversely affect[ed] the terms, conditions, or benefits of [her] employment." *See Holland*, 487 F.3d at 219. There is insufficient evidence to suggest that the denial of training worked a significant detriment on Plaintiff and no reasonable juror could conclude that the denial of training qualified as an adverse employment action in this case.

5.    Promotion

The Magistrate Judge found that Plaintiff established an adverse employment action as to the claim that she was denied a promotion. However, the Magistrate Judge found that Plaintiff's discrimination claim based on the denial of promotion failed because Plaintiff did not demonstrate

that the position remained open or was filled by a similarly qualified applicant outside of the protected class. *See Holmes v. Bevilacqua*, 774 F.2d 636, 639 (4th Cir. 1985); *Page v. Bolger*, 645 F.2d 227, 229 (4th Cir. 1981).  In other words, the Magistrate Judge found that Plaintiff failed to establish the fourth element of a prima facie case of discrimination under the *McDonnell Douglas* framework - that she suffered the adverse employment action under circumstances giving rise to an inference of unlawful discrimination.  The Court agrees.

Plaintiff admits that the position she sought did not remain open but was filled by Paul Reyes.  Plaintiff does not direct the Court to sufficient evidence to create a genuine issue of material fact that Paul Reyes was outside of the protected class or that his qualifications were similar to Plaintiff.  Although Plaintiff stated in her email communications with the South Carolina Human Affairs Commission that Paul Reyes was a young "Latin" male, there is insufficient evidence in the record beyond Plaintiff's assertions as to Mr. Reyes's age or national origin.  Even if Mr. Reyes was outside of the protected class, as the Magistrate Judge pointed out, Plaintiff does not attempt to address whether Mr. Reyes and Plaintiff were similarly qualified for the position. *See* Pl. Dep., ECF No. 34-2 at 14.

Plaintiff suggests Defendant discriminated against her by changing the name of the position for which she applied from "payroll" to "accounts payable/receivable" after she got the interview.  Plaintiff implies that Defendant changed the title of the position so that she would not be qualified and would not be awarded the position.  This argument is purely speculative and does not create a genuine issue of material fact as to whether Plaintiff was denied a promotion under circumstances giving rise to an inference of unlawful discrimination.

16

Because Plaintiff has failed to offer evidence sufficient to create a genuine issue of material fact as to the fourth element of a prima facie case of discrimination, her discrimination claim fails as to the alleged denial of promotion.

In conclusion, Plaintiff's objections are overruled and Defendant is entitled to summary judgment on Plaintiff's discrimination claims brought under Title VII, the ADA, and ADEA.

II.     Hostile Work Environment (Title VII, ADA, and ADEA)

Plaintiff has alleged claims for a hostile work environment under Title VII, the ADA, and ADEA. The Magistrate Judge recommended granting summary judgment as to each of these claims.

A hostile work environment exists only when the workplace is so "permeated with 'discriminatory intimidation, ridicule, and insult,'" that it "would reasonably be perceived, and is perceived, as hostile or abusive." *Robinson v. Priority Auto. Huntersville, Inc.*, 70 F.4th 776, 781 (4th Cir. 2023) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993). The Fourth Circuit Court of Appeals applies a four-part test to see if this standard is met. First, the employee must experience unwelcome harassment. *Robinson*, 70 4th Cir. at 781. Second, the harassment must be because of the employee's protected status, i.e. national origin, race, age, disability, etc. *See id*. Third, the harassment must be so "severe or pervasive" that it alters the conditions of plaintiff's employment and creates an abusive atmosphere. *Id*. Lastly, the harassment must be imputable to the employer. *Id*. "While the first element is subjective, the rest of the test is made up of objective components based on a 'reasonable person' standard." *Id*. at 781-82.

As to the third element - whether the harassment was so "severe or pervasive" that it alters the conditions of plaintiff's employment and creates an abusive atmosphere - the "determination is

made by looking at all the circumstances, which may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Holloway v. Maryland*, 32 F.4th 293, 300–01 (4th Cir. 2022).

As to the fourth element, an employer is liable "if the employer knew or should have known of the harassment and failed to take prompt remedial action reasonably calculated to end the harassment." *Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 423 (4th Cir. 2014) (internal quotation marks omitted).

A.    ADA

The Magistrate Judge recommended that Plaintiff's hostile work environment claim under the ADA be dismissed because Plaintiff failed to show that she is a qualified individual with a disability. R&R, ECF No. 47 at 21. This Court agrees with the Magistrate Judge and finds that Defendant is entitled to summary judgment on Plaintiff's hostile work environment claim under the ADA. As discussed in more detail above, Plaintiff has failed to establish sufficient evidence to create a genuine issue of material fact as to whether she possesses a physical or mental impairment that substantially limits one or more major life activities, that there is any record of such an impairment, or that she was regarded as having such an impairment. Therefore, Plaintiff has not offered sufficient evidence to create a genuine issue of material fact as to whether she is a qualified individual with a disability. Defendant is entitled to summary judgment on Plaintiff's hostile work environment claim under the ADA.

B.    ADEA

As to Plaintiff's ADEA hostile work environment claim, the Magistrate Judge recommended granting summary judgment because Plaintiff failed to show sufficient evidence that she suffered any unwelcome harassment because of her age. Plaintiff's objections do not address the Magistrate Judge's recommendation as to Plaintiff's hostile work environment claim under the ADEA. The Court has reviewed the record and finds that there is insufficient evidence from which a reasonable juror could conclude that Plaintiff suffered any unwelcome harassment because of Plaintiff's age. Finding no clear error, Defendant is entitled to summary judgment on Plaintiff's hostile work environment claim under the ADEA.

C.    Title VII - national origin

The Magistrate Judge acknowledged that there was some evidence of unwelcome harassment based on Plaintiff's national origin. However, the Magistrate Judge also found that the unwelcome harassment based on Plaintiff's national origin was not sufficiently severe or pervasive to constitute a hostile work environment.

The severe or pervasive conduct which gives rise to an abusive work environment must be both objectively and subjectively "hostile" and "abusive." *McIver v. Bridgestone Americas, Inc.*, 42 F.4th 398, 407–08 (4th Cir. 2022) (*citing Harris*, 510 U.S. at 21–22, 114 S.Ct. 367 (requiring the plaintiff to prove "the environment would reasonably be perceived, and is perceived, as hostile or abusive")). Objective analysis of whether a workplace is hostile and abusive looks to "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Boyer-Liberto*, 786 F.3d at 277. The ultimate inquiry is whether the conduct is so "extreme" that it "amount[s] to a change in the terms and

19

conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Even conduct that would objectively cause hurt feelings or offense is not enough to be severe or pervasive. *McIver*, 42 F.4th at 408; *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008).

Plaintiff experienced hostility and rude comments from Jennifer Sims; however, there is insufficient evidence to suggest that Jennifer Sims held any discriminatory animus towards Plaintiff or that the verbal altercation between Plaintiff and Ms. Sims was because of Plaintiff's national origin. The verbal altercation between Plaintiff and Ms. Sims was an isolated encounter that appears to be the result of a personality conflict between the two. Even if Ms. Sims harbored some secret discriminatory animus based on Plaintiff's national origin, the isolated verbal altercation, or other rude comment between Plaintiff and Ms. Sims, is not imputable to Defendant.

The only alleged harassment that could fairly be attributed to Plaintiff's national origin were the comments by Plaintiff's two co-workers regarding Plaintiff speaking Spanish in the Central Precinct and the treatment Plaintiff received from Lt. Powell.

With regard to the harassment or criticism by Plaintiff's two co-workers for speaking Spanish in the Central Precinct, Defendant took corrective action upon learning of the harassment by terminating the two employees who complained about Plaintiff speaking Spanish. Defendant then transferred Plaintiff to the West Precinct at her request. Defendant cannot be held liable for the harassment by Plaintiff's two co-workers in the Central Precinct because Defendant took prompt remedial action reasonably calculated to end the harassment. *See Freeman*, 750 F.3d at 423.

As to the treatment Plaintiff received from Lt. Powell, Plaintiff states that she overheard Lt. Powell refer to Hispanics and Mexicans in a negative way, i.e. "these freaking [or damn] Mexicans."

20

Plaintiff's Affidavit, ECF No. 40-1 at 4.  On another occasion, Lt. Powell allegedly ordered Plaintiff

to get the "f#$%@ out of his office." *Id.*  Viewing the evidence in the light most favorable to

Plaintiff, these encounters between Plaintiff and Lt. Powell were not sufficiently "severe or

pervasive" to alter Plaintiff's conditions of employment or create an abusive atmosphere.  While Lt.

Powell's comments were rude and offensive, Plaintiff only references two instances in which Lt.

Powell made comments that could be construed as discriminatory towards Plaintiff's national origin.

*See* Plaintiff's Aff., ECF No. 40-1 at 1-6.  The "'mere utterance of an ... epithet which engenders

offensive feelings in an employee' does not sufficiently affect the conditions of employment."

*Perkins v. Int'l Paper Co.*, 936 F.3d 196, 208 (4th Cir. 2019).

Lt. Powell's comments were not physically threatening or humiliating and Plaintiff has failed

to demonstrate that the comments from Lt. Powell unreasonably interfered with her work

performance.  Rude treatment, callous behavior, routine difference of opinion, personality conflict,

and isolated incidents (unless extremely serious) do not amount to a hostile work environment. *See*

*Perkins*, 936 F.3d at 208.

As the Magistrate Judge stated: Plaintiff fails to show a workplace that is so "permeated with

'discriminatory intimidation, ridicule, and insult,'" that it "would reasonably be perceived, and is

perceived, as hostile or abusive." R&R, ECF No. 47 at 24 (citing *Harris*, 510 U.S. at 21).  In her

objections to the R&R, Plaintiff argues that the Court should examine Plaintiff's work environment

as a whole including that: 1) Plaintiff was denied an accommodation; 2) Plaintiff complained about

walking to get the attention of co-workers in the office "because they refused to do their jobs to

answer their phones;" 3) Plaintiff was denied multiple uniform shirts; 4) Plaintiff was denied

training on several occasions; and 5) Plaintiff was denied a promotion. Pl. Obj., ECF No. 48 at 10-

11.  The flaw in Plaintiff's argument is that she fails to produce evidence from which a reasonable juror could conclude that the alleged mistreatment she suffered was either sufficiently severe or pervasive to rise to the level of a hostile work environment or because of her national origin.

Considering the totality of the circumstances and the record as a whole, Plaintiff has failed to demonstrate that she suffered an abusive work atmosphere.  There is insufficient evidence to create a genuine issue of material fact as to whether the alleged mistreatment and/or misconduct Plaintiff experienced was so severe and pervasive as to alter the terms and conditions of her employment.

For the reasons stated above, Plaintiff's objections are overruled and Defendant is entitled to summary judgment on Plaintiff's hostile work environment claims brought under the ADA, ADEA, and Title VII.

III.    Retaliation (Title VII, ADA, and ADEA)

To establish a prima facie case of retaliation, the plaintiff must show (1) she engaged in a protected activity; (2) the employer acted adversely against her; and (3) there was a causal connection between the protected activity and the asserted adverse action. *Smith v. CSRA*, 12 F.4th 396, 416 (4th Cir. 2021); *Strothers v. City of Laurel, Maryland*, 895 F.3d 317, 327 (4th Cir. 2018).

A plaintiff may engage in protected activity by opposing an employment activity that was "actually unlawful under" the relevant discrimination statute or that the plaintiff reasonably believed was unlawful under the relevant discrimination statute. *Boyer–Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 282 (4th Cir. 2015) (quoting *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397 (4th Cir. 2005)).  Complaints about management activities that would not constitute unlawful discrimination do not count as protected activity. *See Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 216–17 (4th Cir. 2002).

A.    ADA and ADEA retaliation claims

The Magistrate Judge recommended granting summary judgment on Plaintiff's ADA and ADEA retaliation claims finding "[t]here is no evidence in the record that Plaintiff opposed any employment activity that was unlawful or that she believed to be unlawful under the ADEA or the ADA." R&R, ECF No. 47 at 26.

Plaintiff argues in her objections that she "complained continuously about the work environment, the issues in the work environment and the retaliation that was occurring as evidenced by the several emails attached to her affidavit." Pl. Obj., ECF No. 48 at 16.  Plaintiff, however, does not specify any employment activity she opposed or complained about that was "actually unlawful under" under the ADA or ADEA or that the Plaintiff reasonably believed was unlawful under the ADA or ADEA.

The Court reviewed Plaintiff's affidavit and the emails attached to it and there does not appear to be any reference to employment activity that was actually unlawful under the ADA or ADEA or that Plaintiff reasonably believed was unlawful under the ADA or ADEA.  Accordingly, Plaintiff has not met her burden of establishing that she engaged in protected activity with respect to the ADA or ADEA.

B.    Title VII - national origin

Plaintiff's discussion of her retaliation claims is very limited. *See* Pl. Response to Defendant's Motion for Summary Judgment, ECF No. 40 at 26-27.  The Magistrate Judge construed Plaintiff's Title VII retaliation claim as one alleging retaliatory harassment or retaliatory hostile work environment.  The Magistrate Judge recommended granting summary judgment as to Plaintiff's Title VII retaliation/retaliatory harassment claim because Plaintiff could not show a causal

23

connection between the alleged retaliatory harassment and any protected activity on her part. R&R, ECF No. 47 at 27.

For a retaliation claim, causation can be shown in two ways: by "show[ing] that the adverse act bears sufficient temporal proximity to the protected activity," or by showing "the existence of facts that suggest that the adverse action occurred because of the protected activity," or a combination of the two. *Laurent-Workman v. Wormuth*, 54 F.4th 201, 218–19 (4th Cir. 2022); *Smith*, 12 F.4th at 417. Plaintiff's objections do not address causation or the Magistrate Judge's findings and recommendation as to the alleged retaliatory harassment experience by Plaintiff. Furthermore, Plaintiff does not attempt to address causation with respect to any alleged harassment by Lt. Powell.

Plaintiff argues that she "complained continuously about the work environment, the issues in the work environment and the retaliation that was occurring." Pl. Obj., ECF No. 48 at 16. Plaintiff's vague statement, however, does not address the deficiencies in causation addressed by the Magistrate Judge. Plaintiff also argues that "[w]hen [she] would not release her claims to take a transfer, they refused to return her to work . . .evidencing retaliation." *Id*. However, the record does not indicate that Plaintiff requested to be returned to work after she declined the position at the Clerk of Court's office.

Plaintiff has failed to submit sufficient evidence to create a genuine issue of material fact as to whether a causal connection exists between the alleged retaliatory harassment and any protected activity on her part. Accordingly, Defendant is entitled to summary judgment on Plaintiff's Title VII retaliation claim.

24

For the reasons stated above, Plaintiff's objections are overruled and Defendant is entitled to summary judgment on Plaintiff's retaliation claims.

IV.    Negligent Supervision

The Magistrate Judge recommended that the Court decline to exercise jurisdiction over Plaintiff's state law claim for negligent supervision and remand the matter to state court pursuant to 28 U.S.C. § 1367(c)(3).  Plaintiff did not object to this portion of the R&R.

Having dismissed all claims over which this Court has original jurisdiction, the Court exercises its discretion and declines to exercise supplemental jurisdiction over Plaintiff's state law claim for negligent supervision.  Plaintiff's negligent supervision claim is, therefore, remanded to the Horry County Court of Common Pleas.

## Conclusion

Having reviewed the record and applicable law, the Court overrules Plaintiff's objections and adopts and incorporates by reference the Magistrate Judge's Report and Recommendation [ECF No.47].  Defendant Horry County Police Department's motion for summary judgment is **GRANTED** as to Plaintiff's Title VII, ADA, and ADEA causes of action.  The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claim for negligent supervision pursuant to 28 U.S.C. § 1367(c)(3).  Accordingly, Plaintiff's state law claim for negligent supervision is **REMANDED** to the Horry County Court of Common Pleas.

IT IS SO ORDERED.

September 28, 2023                                  s/ R. Bryan Harwell
Florence, South Carolina                           R. Bryan Harwell
                                                   United States District Judge